UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ISAAC C.H.,

                        Plaintiff,                              22-CV-868Sr

v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #14.

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), benefits with the Social Security Administration ("SSA"), on February 18, 2020, alleging disability beginning December 25, 2018, at the age of 25, due to seizures, panic disorder, post-traumatic stress disorder ("PTSD"), and numbness in legs. Dkt. #6, p.78.

On November 2, 2021, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Kathleen Doehla, at an administrative hearing

conducted telephonically before Administrative Law Judge ("ALJ"), Stephen Cordovani. Dkt. #6, pp.36-66. Plaintiff's attorney clarified plaintiff's severe impairments as chronic pain from gunshot wounds to the face and bilateral lower extremities, as well as PTSD and anxiety. Dkt. #6, p.40.

Plaintiff testified that he lived in an apartment with his mother, who provides for him. Dkt. #6, pp.42-43. He has a seven year-old daughter, who stays with him every other weekend. Dkt. #6, pp.44-45. He has a driver's license, and drives approximately three days a week, usually to medical appointments. Dkt. #6, p.46. He was restarting counseling after a year and half. Dkt. #6, pp.46-47. He had been attending counseling for about two years, but stopped because his counselors kept changing and he felt like he had to keep repeating everything over and over again, which was "like a constant flashback of everything that happened." Dkt. #6, pp.47 & 55. He was shot December 1, 2015 and explained that he was unable to work because

> My legs, the bullets in my legs are starting to move around and hit nerves where I can't even function. My body feels like it's on fire in the morning. My PTSD, it's not allowing me to interact around anybody. It's only getting worse. That's why I'm seeking counseling because I want it to get better. My jaw is starting to get tighter to the point where sometimes [when] I eat I grind my teeth. And it creates a massive migraine where I have to lay down for at least an hour, hour and a half.
>
> My anxiety comes along with all these other things too when I start thinking about what may be wrong with my headache or why my body is feeling like this. Or semtimes I think that one of the bullets are going to move and paralyze me because it just feels like they're on my nerves. I can feel them poking through my skin.

Dkt. #6, p.52. He testified that he was getting his OSHA certificate and had plans for his life until he was shot and ended up "in a whole other state of mind." Dkt. #6, p.57.

Plaintiff testified that he is able to sit for about an hour before he goes numb and can stand for about an hour. Dkt. #6, pp.52 & 53-54. He can walk about two blocks. Dkt. #6, p.52. He cannot lift his daughter, who is 60 pounds. Dkt. #6, p.53. He cannot touch his toes and starts dragging his left leg halfway up a flight of stairs. Dkt. #6, p.53. When he gets stressed, it feels as though his head is underwater and he curls up in a ball for hours. Dkt. #6, pp.54-55. The pain makes it difficult for him to get out of bed and is why he can't schedule early morning appointments. Dkt. #6, p.55. He experiences nightmares and can't go back to sleep, which leaves him feeling weak the next day. Dkt. #6, p.55. He experiences panic attacks about four times a week, which he described as sharp pains with tightness in his chest and sweating during panic attacks and has to lie down and wait for them to go away. Dkt. #6, p.56. His PTSD is triggered by loud noises or someone walking up along side him unexpectedly. Dkt. #6, p.56. He is not currently prescribed any medication. Dkt. #6, p.59. He spends most of his time in his apartment where he feels safe, watching TV. Dkt. #6, p.58.

When asked to assume an individual with plaintiff's age, education and past work experience who was capable of medium exertion and limited to no ladders, ropes or scaffolds, no hazards and no concentrated exposure to fumes, odors, dusts, gases, poor ventilation or other respiratory irritants, the VE testified that such an individual could work as an order picker, which offered approximately 44,000 positions

nationally; hand packager, which offered 62,000 positions nationally, or counter supply worker, which offered 120,000 positions nationally, each of which were medium exertion, unskilled positions. Dkt. #6, p.63. The VE further opined that if such individual was off task more than 10% of the work day and absent more than once per month, that individual would be unemployable. Dkt. #6, p.64.

The ALJ rendered a decision that plaintiff was not disabled on November 29, 2021. Dkt. #6, pp.21-30. The Appeals Council denied review on September 13, 2022. Dkt. #6, p.6. Plaintiff commenced this action seeking review of the Commissioner's final decision on November 10, 2022. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient Residual Functional Capacity ("RFC"), for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that she could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful

activity since the application date of February 18, 2020; (2) plaintiff's seizure disorder constituted a severe impairment; (3) plaintiff's impairment did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform work at the medium exertion level but could not climb ladders, ropes or scaffolds or work around hazards and should avoid concentrated exposure to respiratory irritants; and (5) plaintiff was capable of working as a hand packager and counter supply worker, which are medium exertion, unskilled positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #6, pp.23-30.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021), *citing* 20 C.F.R. § 404.1520c(a) & (c). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.*, *citing* 20 C.F.R. § 404.1520c(b)(2) & (c)*.*

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.*, *citing* 20 C.F.R. § 404.1520c(c)(1). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.*, *citing* 20 C.F.R. § 404.1520c(c)(2). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec.*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Id., quoting Shawn H. v. Comm'r of Soc. Sec.*, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (alteration in original).

### Mental Impairment

Plaintiff argues that the ALJ failed to adequately explain why the opinion of the consultative examiner that plaintiff had mild to moderate limitations in regulating emotion, controlling behavior and maintaining well-being was not fully incorporated into plaintiff's RFC. Dkt. #9-1, pp.8-10.

The Commissioner argues that the ALJ properly determined that plaintiff did not have a severe mental impairment and that the ALJ's determination that plaintiff was capable of performing unskilled work is supported by substantial evidence. Dkt. #11-1, pp.7-14.

An impairment is found not severe when medical evidence establishes only a slight abnormality that would have no more than a minimal effect on an individual's ability to work. SSR 85-28, 1985 WL 56856, at *3 (S.S.A. Jan. 1, 1985). Although the standard for finding a severe impairment at step two of the sequential analysis is *de minimis*, and intended only to screen out the very weakest cases, the mere presence of a diagnosis or treatment is, by itself, insufficient to establish a condition as severe. *Anna G. v. Comm'r of Soc. Sec.*, 2021 WL 3721140, at *2 (W.D.N.Y. Aug. 23, 2021). Regardless of the determination at step 2, an ALJ must account for limitations caused by both severe and nonsevere impairments in the formulation of the plaintiff's RFC. *Christian H. v. Comm'r of Soc. Sec.*, 20-CV-1490, 2022 WL 3648022, at *4 (W.D.N.Y. Aug. 24, 2022). However, an ALJ does not err by formulating an RFC without mental limitations or restrictions where a mental impairment causes only mild limitations that do not result in any functional work-related restrictions. *Id.; See Grace v. Comm'r of Soc. Sec.*, 20-CV-1023, 2022 WL 912946, at *3 (W.D.N.Y. 2022) (ALJ recognized medically determinable impairments at step 2 and properly determined that they did not cause more than minimal limitations in plaintiff's ability to perform basic mental work activities).

Plaintiff underwent a consultative psychiatric evaluation with Susan Santarpia, Ph.D., on June 29, 2020. Dkt. #6, p.540. Plaintiff reported no treatment for counseling or medication for over a year, and Dr. Santarpia's noted her review of records included outpatient treatment until 2019. Dkt. #6, p.540. Plaintiff reported difficulties falling asleep and bouts of diminished sense of pleasure and social withdrawal. Dkt. #6, p.540. Because his gunshot wounds were from a random attack, he reported fear that it might happen again when he goes out. Dkt. #6, pp.540-541. Plaintiff initially denied drug or alcohol use, but reported daily marijuana use, mainly at night to sleep, when Dr. Santarpia noted it was included in a prior consultative report. Dkt. #6, p.541. Plaintiff reported that he spends some days as a primary caregiver for his daughter and socializes with friends and family. Dkt. #6, p.542.

Dr. Santarpia observed that plaintiff was cooperative, with coherent and goal directed thought processes, full range affect and appropriate speech and thought content. Dkt. #6, p.541. His mood was euthymic. Dkt. #6, p.542. Plaintiff's attention and concentration was mildly impaired, partly due to lack of effort. Dkt. #6, p.542. He could do serial 3s, but refused serial 7s. Dkt. #6, p.542. Although he was noted to have performed counting and one-step calculation in 2016, he could not do either upon examination with Dr. Santarpia. Dkt.#6, p.542. His recent and remote memory skills were intact, with immediate recall of 3/3 objects and 2/3 after delay. Dkt. #6, p.542. He was able to recite 6 digits forward and 3 in reverse order. Dkt. #6, p.542. His insight and judgement was fair. Dkt. #6, p.542. Dr. Santarpia opined that plaintiff was

> able to understand, remember, and apply simple, as well as complex directions and instructions; use reason and

> judgment to make work-related decisions; interact adequately with supervisors, coworkers, and the public; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; maintain personal hygiene and appropriate attire; and be aware of normal hazards and take appropriate precautions within normal limits. Mild to moderate impairment is demonstrated in regulating emotion, controlling behavior, and maintaining well being. Difficulties are caused by lack of seeking treatment for over a year.
>
> The results of the present evaluation appear to be consistent with psychiatric problems, but in and of itself, this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis.

Dkt. #6, p.543.

State agency review psychologist J. May, Ph.D., reviewed the evidence of record and determined that the totality of evidence supported a determination that plaintiff's medically determinable mental impairments were nonsevere, with no limitation in the mental functioning domains of understanding, remembering or applying information; interacting with others; and concentrating, persisting or maintaining pace and mild limitation in the domain of adapting or managing oneself. Dkt. #6, p.82. Upon reconsideration, L. Dekeon, Ph.D., affirmed the prior assessment of nonsevere psychiatric impairments. Dkt. #6, p.551.

The ALJ's decision also noted evidence that plaintiff had been discharged from counseling for non-attendance and failure to follow recommendations, particularly with respect to use of non-prescribed medication and marijuana, as well as evidence that plaintiff was prescribed medication by a medical doctor for reports of anxiety and

panic attacks. Dkt. #6, p.24. Medical records indicate that plaintiff was referred to psychiatry for evaluation of mood issues and substance use by DENT Neurological on February 17, 2020 (Dkt. #8, p.524), and that he was prescribed medication for panic episodes and counseled to reduce marijuana usage on August 19, 2021 after reporting onset of moderate anxiety to his primary care physician on August 19, 2021. Dkt. #8, p.184.

At step 2 of the sequential analysis, the ALJ determined that plaintiff's medically determinable mental impairments of unspecified anxiety disorder; PTSD; panic disorder; and cannabis use disorder, considered singly and in combination, did not cause more than minimal limitation in the plaintiff's ability to perform basic mental work activities and were, therefore, nonsevere. Dkt. #6, p.24. More specifically, the ALJ determined that plaintiff had no limitation in the mental functioning domains of understanding, remembering or applying information; interacting with others; and concentrating, persisting or maintaining pace. Dkt. #6, p.25. With respect to the domain of adapting or managing oneself, the ALJ determined that the plaintiff had a mild limitation, explaining:

> The claimant endorsed some symptoms of depression and anxiety, but he has not engaged in significant or consistent treatment. The claimant admitted to use of Klonopin bought on the street. The claimant admitted that he can care for his personal needs. He said he does not cook, clean or shop, but is sometimes the primary caregiver for a young child. The claimant can manage money. Overall, at most, the record supports mild limitation.

Dkt. #6, p.25.

At step 4 of the sequential analysis, the ALJ found the state agency psychological opinions persuasive because they were supported by citation to evidence in the record and consistent with plaintiff's sporadic treatment history. Dkt. #6, p.29. The ALJ noted that plaintiff had not engaged in specialized mental health treatment either with medication or counseling for over two years and his explanation regarding termination of services was inconsistent with evidence indicating that he violated attendance policy. Dkt. #6, p.29. The ALJ found Dr. Santarpia's opinion largely persuasive, noting that although she concluded that plaintiff had mild to moderate limitations in regulating emotions, controlling behavior and maintaining well being, the bulk of the record supported at most mild limitations in this area. Dkt. #6, p.29. The ALJ also noted that Dr. Santarpia reported a lack of effort during testing and that plaintiff only admitted daily marijuana use when confronted with previous records. Dkt. #6, p.29.

As set forth above, the ALJ's assessment of the severity of plaintiff's medically determinable mental impairments and determination that plaintiff retained the mental capacity to perform unskilled work is far from cursory. To the contrary, the ALJ sufficiently explained his reasoning, which is supported by substantial evidence in the record.

VE Testimony

Plaintiff also argues that the VE's testimony that plaintiff could work as a hand packager conflicts with the ALJ's limitation of plaintiff's capacity to work in an environment with loud noises. Dkt. #9-1, pp.11-13.

The Commissioner responds that, even if the VE's testimony that plaintiff could work as a hand packager is inconsistent with the Dictionary of Occupational Titles due to plaintiff's noise imitations, plaintiff remains capable of working as a counter supply worker. Dkt. #11-1, pp.14-16.

The Commissioner meets his burden at the fifth step by identifying even a single job that exists in significant numbers in the national economy that the plaintiff is capable of performing. *Hessie W. v. Comm'r of Soc. Sec.*, 20-CV-843, 2022 WL 178535, at *5 (W.D.N.Y. Jan. 20, 2022). While courts within the Second Circuit have refused to draw a bright line standard for the minimum number of jobs required to show that work exists in significant numbers, the threshold number is relatively low. *Geron S. v. Comm'r of Soc. Sec.*, 2024 WL 1932064, at * 2 (W.D.N.Y. May 2, 2024). Given the VE's testimony that there are 120,000 positions available nationally for the position of counter supply worker, the Court finds that the Commissioner has met his burden.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #9), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #11), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**   **Buffalo, New York**
             **September 30, 2025**

                                           s/ H. Kenneth Schroeder, Jr.
                                           **H. KENNETH SCHROEDER, JR.**
                                           **United States Magistrate Judge**